UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PEDRO RABELL,  :  | No. 3:13-cv-00780 (MPS) |
|     Plaintiff,  : | |
|      : | |
| v.  : | |
|      : | |
| UNITED STATES OF AMERICA,  : | |
|     Defendant.  : | May 15, 2015 |

_____

## RULING ON MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

Plaintiff Pedro Rabell ("Rabell") is suing the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, ("FTCA") for negligence in connection with a slip-and-fall incident on May 31, 2011, at the United States Post Office located at 27 Masonic Street, Suite 1, in New London, Connecticut ("Post Office"). The United States has moved for summary judgment. Because Rabell has failed to produce evidence from which a reasonable jury could find that the United States, through its agents, had actual or constructive notice of the allegedly dangerous conditions at the Post Office that caused his injury, the Court grants the motion for summary judgment.

### II.  Facts

The following are undisputed facts,[1] except for the final paragraph of this section:

Rabell maintains a post office box at the Post Office. Since opening his post office box in 1990, Rabell has routinely checked the box, typically several times per week. On May 31, 2011,

---

[1] Rabell, who is represented by counsel, failed to file a Local Rule 56(a)2 Statement admitting or denying the specific facts set forth in the United States's Local Rule 56(a)1 Statement. The Court therefore considers the facts contained in the United States's Statement and supported by evidence in the record to be undisputed for the purposes of this motion. D. Conn. L. R. 56(a)1 ("There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement[]" . . . . All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.").

Rabell entered the Post Office between approximately 10:00am and 11:00am to check his post office box. It was a sunny, dry, and clear day. He was dressed in jeans, a T-shirt, and steel-toed leather boots. He entered using the stairs and handrail. As Rabell entered, there were no obstructions and no dirt or water on or near the stairs, and the two mats placed at the top of the stairs—which were always there—appeared normal and flat to him. He remained inside for about two minutes to retrieve some small envelopes, which he placed in his pocket before exiting. As he exited the Post Office, he fell down the interior entrance stairs and was injured. No one witnessed his fall, but other people in the area came to his aid.

Post Office custodian Philip Nestor ("Nestor") had a standard routine of coming in at 5:00am to check the entire post office for safety hazards and debris, sweep the floor, and vacuum the mats near the front entrance and lobby. When necessary, he would also wash the floor, including the area under the entrance mats. Throughout the day, approximately every hour, he would check for safety hazards and debris on the floor, including wrinkled or misaligned mats. On May 31, 2011, Nestor came to work at 5:00am and performed his standard duties. At approximately 11:00am, Nestor checked the area in question and there was no indication of a spill, dirt, or other safety hazards in the area. The mats appeared to be clean and in proper position.

Post Office custodian Lee Poplett ("Poplett") had duties that included walking through the building looking for and correcting safety hazards. On Saturdays, he vacuumed the entrance mats of the Post Office. On the morning of May 31, 2011, at approximately 11:10am, Poplett passed through the Post Office lobby including the area where the entrance mats are located. He did not notice any safety hazards, such as liquid spills, wrinkles in the mats, or misalignment of

the mats. In Poplett's experience, the entrance mats are of a sturdy weight with good grip and not prone to sliding. He does not recall having any issues with the mats sliding prior to Rabell's fall.

Rabell is suing the United States under the FTCA, alleging that the mat at the top of the stairs at the Post Office was defective and caused his injuries, and the Post Office was negligent in failing to prevent it. Specifically, he claims that one of the mats at the top of the stairs slipped, which caused him to lose his balance and fall. Rabell Dep. at 34. He says that the mat was located almost at the edge of the stairs and should not have been, *id.*, which he did not notice until he had already fallen and observed someone else move the mat, *id.* at 39-40. He says that the fact that he slid was an "indication the mat was dusty underneath." *Id.* at 40.

### III.    Legal Standard on Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. Pro. 56(a)). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A

dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

**IV.     Discussion**

Rabell's negligence claim against the United States fails as a matter of law because he has failed to produce evidence from which a reasonable jury could find that the United States, through its agents at the Post Office, had actual or constructive notice of the alleged defect on the Post Office entrance stairs. The Court therefore grants summary judgment on Rabell's negligence claim.

"By waiving sovereign immunity under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred, the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) (quotation marks and citations omitted). Under Connecticut law, "[a] business owner owes its invitees a duty to keep its premises in a reasonably safe condition." *DiPietro v. Farmington Sports Arena, LLC*, 49 A.3d 951, 957 (Conn. 2012) (quotation marks omitted). "Nevertheless, for a plaintiff to recover for the breach of a duty owed to him as a business invitee, it is incumbent upon him to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it." *Id.* (quotation marks and alteration marks omitted). "[T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of

4

conditions naturally productive of that defect even though subsequently in fact producing it." *Id.* "To defeat a motion for summary judgment in a case based on allegedly defective conditions, the plaintiff has the burden of offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice." *Id.* "[T]o charge a defendant with constructive notice it is incumbent on the plaintiff to establish that the defect had been there a sufficient length of time and was of such a dangerous character that the defendant by the exercise of reasonable care could and should have discovered and remedied it." *Lombardi v. Town of E. Haven*, 12 A.3d 1032, 1040 (Conn. App. 2011).

Rabell argues that he does not need to prove that the Post Office had actual or constructive notice of the defect, because any defect was created by the Post Office. Even if Rabell had produced evidence supporting his claim that the Post Office created the alleged defect—he has not and instead offers only speculation based on the fact that Post Office employees had cleaned the mats hours earlier—merely showing that the Post Office created the defect would not eliminate Rabell's burden to produce evidence that the Post Office had notice of the specific defect that caused his injury. *DiPietro*, 49 A.3d at 960-61 ("The plaintiff argues that the mere assertion that the defendants were responsible for installing an allegedly defective carpet obviates the notice requirement. We disagree. Analysis of the affirmative act rule as it has been applied shows that it permits the inference of actual notice only when the defendant or its employees created an obviously hazardous condition. . . . Rather than acting as an alternative to notice, the affirmative act rule allows an inference of notice when circumstantial evidence shows

that the defendant knew or should have known of the dangerous condition because it was a foreseeably hazardous one that the defendant itself created.")[2]

There is no basis for a finding of actual or constructive notice here. Rabell has produced no evidence showing that the Post Office knew about the alleged defect or that there had been any prior accidents involving the mats at the top of the stairs. Poplett says that he cannot recall ever having previously had trouble with the mats sliding or sitting too close to the edge. Although Nestor performed routine hourly checks for safety hazards, nothing in Nestor's affidavit suggests that he discovered any hazards on May 31, 2011.[3] Nor is there any evidence that the alleged defect was obvious or had existed for so long that the Post Office should have discovered it. Rabell has produced no evidence as to how long the alleged defect existed, and he himself did not detect any visible hazards prior to his fall, despite looking. Rabell Dep. at 23 ("Q: Okay. And when you walked into the post office, did you have any trouble or did you see any dirt or water or any sort of obstruction near the stairway. A: No."); *id.* at 40 ("Q: So, you looked and you didn't see—A: Yes. Q:—anything obvious at that time? A: It looked normal, boom.").

---

[2] The defendant suggests that Rabell may be trying to invoke the "mode of operation rule," which dispenses with proof of notice in certain cases involving self-service businesses that adopt modes of operation that create a foreseeable risk of injury to customers. But "[t]he mode of operation rule, as adopted in Connecticut, does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises." *Fisher v. Big Y Foods, Inc.*, 3 A.3d 919, 925 (Conn. 2010). It is not at all clear from Rabell's brief that he seeks to make a mode-of-operation premises liability claim, but in any event, he has not provided evidence that the Post Office employed a "specific method of operation" that created "particular hazards that occur regularly or are inherently foreseeable." As noted, there is no evidence in the record of a previous problem with the mats.

[3] The affidavit never expressly states that Nestor discovered no hazards during his hourly checks conducted prior to Rabell's fall, but the affidavit, taken as a whole, implies as much. At the very least, it cannot reasonably be read to imply the opposite—i.e., that a hazard was discovered. Both Nestor and Poplett do expressly state that they inspected the area by the stairs at roughly 11:00am and found no hazards, but this evidence is not relevant to the issue of notice, as Rabell alleges that he fell between 10:00am and 11:00am.

## V. Conclusion

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 25) is GRANTED. The Clerk is directed to enter judgment for the defendant and close this case.

**SO ORDERED** this 15th day of May 2015 at Hartford, Connecticut.

                                        /s/
                                  Michael P. Shea
                                  United States District Judge